IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

CONN FEAMSTER, et al.,

      Plaintiffs,

v.             CIVIL ACTION NO.  6:10-cv-00241

MOUNTAIN STATE BLUE CROSS
& BLUE SHIELD, INC., et al.,

      Defendants.


MEMORANDUM OPINION AND ORDER

   Pending before the court is defendant Highmark West Virginia, Inc. d/b/a Mountain State

Blue Cross & Blue Shield's ("Highmark") Motion to Dismiss [Docket 18].  For the reasons stated

below, the motion is **GRANTED in part** and **DENIED in part**.

I.  **Background**

  A.  *Factual Background*

   Plaintiff Sandra Feamster was an employee of Relational Management Services, LLC

("RMS"), beginning September 15, 2007.  Through her employment with RMS, she participated in

their group medical plan (the "Plan"), which was insured in part by Highmark.  Pursuant to the Plan,

she entered into a contract whereby "medical benefits are provided to eligible RMS employees, as

determined by [Highmark]" (the "Group Contract"). (Compl. ¶ 5.)[1]  Feamster's husband, Conn, was

---

[1]The plaintiffs filed an action in this court on March 5, 2010, and subsequently amended
their complaint twice.  The second amended complaint, which was filed on April 29, 2010,
controls the litigation.

considered a dependent under the Plan.  Feamster remained employed with RMS until March 2008, when she claims she was "forced to leave" due to illness.  (Pls.' Resp. Opp. Defs.' Mot. Dismiss 1.) Feamster claims that her departure from RMS was a "qualifying event" sufficient to trigger benefits under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., as amended by the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161, *et seq*.[2]

The plaintiffs allege that Feamster made a "specific request and application" for COBRA coverage and submitted a COBRA premium, which RMS and Highmark (collectively, "the defendants") still retain.  (Compl. ¶ 54.)  Two months after her departure from RMS – despite this request and submission, and other representations by the defendants that she would be entitled to COBRA coverage – the defendants advised Feamster that she was not entitled to continuation coverage under COBRA.  (*Id*. at ¶  25, 47; Pls.' Resp. Opp. Def.'s Mot. Dismiss 1.)

The plaintiffs allege that the defendants "did not provide the Plaintiffs with the required notices of their rights to continuation coverage under COBRA" and "denied Plaintiffs their rights to continuation coverage under COBRA" (Count I, Compl. ¶ 24, 25.)  As a result of this failure, the plaintiffs claim that they are entitled to $110 per day from the plan administrator, starting from the date of the failure to provide coverage (Count II, Compl. ¶ 31.)  They also allege that the defendants "are estopped from denying their obligations to provide continuation coverage under COBRA"

---

[2] COBRA provides that "[t]he plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan."  29 U.S.C. § 1161(a).  This provision does not apply, however, to "any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year."  *Id*. at § 1161(b).

(Count III, Compl. ¶ 44); breached their fiduciary duties under ERISA (Count IV, Compl.¶¶ 46-55); and "affirmatively misrepresented their obligations under ERISA in response to direct inquiries by the Plaintiffs."  (Count V, Compl. ¶ 59.)

The plaintiffs' health problems caused them to incur over $500,000 in medical expenses for which they have no coverage.  They filed suit in the Circuit Court of Greenbrier County, West Virginia, on March 2, 2009, alleging, *inter alia*, that RMS breached Feamster's employment agreement, breached its obligation to act in good faith, and misrepresented the terms of Feamster's employment.  The action is still pending.  Three days later, the plaintiffs filed this action in federal court, invoking the federal provisions of ERISA and COBRA.  They seek reinstatement of benefits retroactive to the qualifying event triggering COBRA, as well as penalties, fees, and costs.[3]

B.      *The Plan Documents*

The court held a hearing on Highmark's motion to dismiss on July 6, 2010.  At this hearing, the parties disputed which documents comprise the "Plan" at issue.  In the original filings, the parties submitted only the Group Contract (which was entered into between Highmark and RMS) and a group application (which appears to be filled out only by a RMS representative) (the "Group Application").  At the hearing, Highmark and the plaintiffs agreed that these documents did not comprise the entire Plan.  As a result, the court requested that the parties submit all documents that constituted the Plan.  On July 9, defendant RMS – which did not file a motion to dismiss – submitted certain documents that compose the "group health plan" for its employees [Docket 41].

---

[3]At the hearing on this motion, the plaintiffs abandoned their claims for monetary damages because they admitted they are bringing all claims under Section 502(a)(3) of ERISA. Section 502(a)(3) does not allow for monetary damages, but only equitable relief.  *See Provident Life & Accident Ins. Co. v. Cohen,* 423 F.3d 413, 423 (4th Cir. 2005).

These documents include the Group Contract; the Group Application (RMS 00001-00026); a document entitled "Your Health Care Benefits and How to Use Them," which provides a certificate of coverage and Summary of Benefits Insert ("SOBI") (RMS 00027-00094); and a document entitled "Your Guide to Benefits and Enrollment 2007-2008" (RMS 00095-00105).

Highmark and the plaintiffs filed objections to this submission [Dockets 42, 43]. Highmark argues that the entire Plan is comprised of only the Group Contract, the Group Application, and the SOBI. It disagrees with RMS's representation that certain other documents identified as "Plan Documents" are part of the Plan, specifically because there is no "wrap document" that "adopt[s], incorporat[es], and utiliz[es] such documents as the 'Plan Documents.'" (Def.'s Obj. Regarding Designation of Plan Documents 3-4 [Docket 42].)

The plaintiffs argue that the documents submitted by RMS do not accurately represent the Plan. They contend that ERISA "requires that a summary plan description contain essential elements for proper disclosure of plan terms and conditions" and "[t]he certificate of coverage designated by RMS includes a series of blanks where much of this required information, including the plan administrator's address and contact information, should be provided." (Pls.' Resp. and Obj. Notice of Filing Plan Documents 2-3 (citing 29 U.S.C. § 1022(b)).) The plaintiffs assert that the absence of designation of "administrator," for example, creates an issue of fact as to who is the plan administrator. In addition, the certificate of coverage states that anyone with questions about COBRA coverage should "contact your Plan Administrator or the Customer Service number on your ID Card." (RMS 00077.) The plaintiffs claim that the number on the ID card is that of Highmark. (Pls.' Resp. and Obj. Notice of Filing Plan Documents 4.) They also allege that Highmark, not RMS, mailed the certificate of coverage to them.

## II.     Motion to Dismiss Standard

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  As the Supreme Court recently reiterated in *Ashcroft v. Iqbal*, that standard "does not require 'detailed factual allegations' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  To achieve facial plausibility, the plaintiff must plead facts that allow the court to draw the reasonable inference that the defendant is liable, and those facts must be more than merely consistent with the defendant's liability to raise the claim from merely possible to probable. *Id.*  For this motion, the court examines whether the allegations in the complaint are sufficient to state a claim against Highmark alone.

## III.     Discussion

At the July 6 hearing, the plaintiffs represented that their entire claim is based on Section 502(a)(3) of ERISA.  This section allows a participant, beneficiary, or fiduciary to "enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan" or "to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provision of [ERISA] or the terms of the plan . . . ." 29 U.S.C. § 1132(a)(3).  Highmark seeks to dismiss the action against it because it "neither administers the Plan nor serves as a fiduciary with respect to the Plan," and as such, "is an improperly named defendant in this matter."  (Def.'s Mot. Dismiss 1.)

### A.     *Counts I through IV*

Section 502(a)(3) "makes no mention at all of which parties may be proper defendants – the focus, instead, is on redressing the 'act or practice which violates any provision of [ERISA Title I].'" *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (quoting 29 U.S.C. § 1132(a)(3)). Rather, "defendant status under § 502(a)(3) may arise from duties imposed by § 502(a)(3) itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of ERISA's substantive provisions." *Id*. at 247. *See also LeBlanc v. Cahill*, 3 F. App'x 98, 101 (4th Cir. 2001) (stating that "there is 'no limit . . . on the universe of possible defendants'" in a Section 502(a)(3) action (quoting *Harris Trust*, 530 U.S. at 246)). As such, Highmark's argument that it is not the administrator or a fiduciary does not go far enough.

Even considering this argument, however, it is not proper at this juncture to determine whether Highmark is an administrator or fiduciary with respect to the Plan. ERISA defines "administrator" as "the person specifically so designated by the *terms of the instrument under which the plan is operated,*" or, "if an administrator is not so designated, the plan sponsor." 29 U.S.C. § 1002(16)(A) (emphasis added). ERISA dictates that "[a] summary plan description [(SPD)] of any employee benefit plan shall be furnished to participants" and "shall be written in a manner calculated to be understood by the average plan participant." 29 U.S.C. § 1022(a). An SPD should contain "the name and address of the administrator." *See id.* at § 1022(b). Here, there is no identifiable SPD in the documents provided to the court. Indeed, page 94 of the certificate of coverage directs the covered employee that "[i]f this Plan qualifies as an ERISA Plan, you may request the following information from your Plan Administrator: . . . Type of Administration of the Plan[; and the] Name, Business Address, and Business Phone Number of the Plan Administrator[.]" (RMS 00094.) This information, however, is not provided.

-6-

Whether Highmark is a fiduciary also requires examination of the Plan, as well as other relevant facts. ERISA fiduciaries include "not only those named as fiduciaries in the plan instrument, or who, pursuant to a procedure specified in the plan, are identified as fiduciaries under 29 U.S.C. § 1102(a)(2), but any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996) (internal quotation marks and alterations omitted).[4] Fiduciary status is "not an all-or-nothing concept." *Id.* at 1162 (internal quotation marks omitted). According to ERISA,

> [A] person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1102(a)(2) (emphasis added). The words "to the extent" mean that "a party is a fiduciary only as to the activities which bring the person within the definition." *Custer*, 89 F.3d at 1162 (internal quotation marks omitted). Factual development is therefore necessary on the issue of Highmark's role as a fiduciary. *See Shanks v. Honda of Am. Mfg.*, 2009 WL 2132621, at *2 (S.D. Ohio July 10, 2009) ("[T]he question of who is an ERISA fiduciary usually has a factual component that is not susceptible to resolution by way of a motion to dismiss."); *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 907-09 (E.D. Mich. 2004) (holding that fiduciary status could not be

---

[4]Title 29 U.S.C. § 1102(a)(2) provides that a "named fiduciary" under an ERISA plan is one "who is named in the plan instrument, or who, pursuant to a procedure specified in the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly."

determined on a motion to dismiss); *In re Electronic Data Sys. Corp. "ERISA" Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings . . . . [U]nder Federal Rule of Civil Procedure 8(a)'s notice pleading requirements, courts will typically have insufficient facts at the motion to dismiss stage from which to make the law/fact analysis necessary to determine . . . fiduciary status.").

Who is considered an administrator or a fiduciary begins with an examination of an ERISA plan.  In this case, however, the parties cannot agree on what constitutes the Plan.  It is therefore too early to rule on these disputes.  For these reasons, Highmark's motion to dismiss is **DENIED** as to Counts I, II, III, and IV.

      *B.*     *Count V*

At the July 6 hearing, the plaintiffs conceded that Count V is duplicative of Count IV, and as such, Highmark's motion as to Count V is **GRANTED**, and Count V is **DISMISSED**.  *See Lee v. City of So. Charleston*, 2009 U.S. Dist. LEXIS 74479, *37 (S.D. W. Va. Aug. 21, 2009) (dismissing duplicative claims in complaint).

## IV.    Conclusion

For these reasons, Highmark's motion [Docket 18] is **GRANTED in part** and **DENIED in part**.  It is **GRANTED** as to Count V, which is duplicative.  Count V is thus **DISMISSED**.  The motion is **DENIED** as to all other counts.

The court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER:      July 19, 2010

Joseph R. Goodwin, Chief Judge