**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**PARKERSBURG**

**CONN FEAMSTER and**
**SANDRA FEAMSTER,**

      **Plaintiffs,**

**vs.**                        **Civil Action No. 6:10-cv-241**
                                  **Chief Judge Goodwin**

**HIGHMARK WEST VIRGINIA INC.**
**d/b/a MOUNTAIN STATE BLUE CROSS**
**& BLUE SHIELD and RELATIONAL**
**MANAGEMENT SERVICES, LLC,**

      **Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT RELATIONAL MANAGEMENT SERVICES, LLC'S**
**MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Defendant Relational Management Services, LLC ("RMS"), by and through its under-signed counsel, submits this memorandum in support of its motion for summary judgment. RMS is entitled to summary judgment because (1) Plaintiffs' COBRA[1] claims are time-barred (Counts I and II); (2) in the Fourth Circuit a plaintiff cannot rely on federal common law under ERISA for an estoppel claim, and Plaintiffs could not satisfy the elements of such a claim in any event (Count III); (3) plaintiffs may not maintain an action under § 502(a)(3) of ERISA,[2] either for breach of fiduciary duty or to enforce the federal common law of estoppel (if such a thing existed) where, as here, another more specific provision of ERISA's civil enforcement scheme applies to the claim (Counts III and IV); and (4) even if the Plaintiffs could proceed under

---

[1] Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161-1167.

[2] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*

§ 502(a)(3), such claims would fail for lack of an available remedy (Counts III and IV).   For those reasons, as explained below, RMS's motion for summary judgment should be granted.

## II. STATEMENT OF THE CASE

### A.   Statement of Facts[3]

RMS operates the Greenbrier Academy for Girls, a boarding college preparatory school in southern West Virginia.  State Court Complaint ("St. Ct. Compl.") ¶¶ 6-7 (Exhibit 2).  Sandra Feamster began working for RMS on or about September 14, 2007.  *Id.* ¶ 9; State Court Action Deposition of Sandra Feamster ("S. Feamster Dep.") at 20 (excerpts at Exhibit 3).  In connection with her employment, Ms. Feamster had medical insurance through Defendant Highmark West Virginia Inc. d/b/a Mountain State Blue Cross Blue Shield ("MSBCBS") under the terms of a group health plan sponsored by RMS ("the Plan").  Doc. 13 (Second Amended Complaint) ¶ 6.  Conn Feamster, was covered under the Plan as Ms. Feamster's spouse.  *Id.* ¶ 7.  The Plan is an employee welfare benefit plan within the meaning of the ERISA.  *See* 29 U.S.C. § 1002(1).

In the mid-March 2008, Ms. Feamster took a medical leave of absence.  Ex. 2 ¶ 14; *see also* Doc. 13 ¶ 21 ("In March 2008, a medical condition forced Plaintiff Sandra Feamster to leave her employment with RMS.").  While on leave, Ms. Feamster continued to be responsible for her portion of her medical insurance premiums.  Ex. 3 (S. Feamster Dep.) at 12-13.  In March and April 2008, Ms. Feamster had a number of telephone conversations with Sharon Findlay, RMS's human resources director, regarding payment of her premiums.  Ex. 3 (S. Feamster Dep.) at 69-71, 75-76; State Court Action Deposition of Sharon Findlay ("Findlay Dep.") at 27-29, 32

---

[3] As explained more fully below, in March 2009 these Plaintiffs sued RMS and Sharon Findlay, its former human resources director, in the Circuit Court of Greenbrier County, West Virginia (the "State Court Action").  In that case, Plaintiffs allege that RMS and Ms. Findlay promised that Sandra Feamster would be entitled to COBRA coverage when, in fact, she was not.  The statement of facts presented in text is, in part, based on those proceedings and on information gathered during discovery in that action. In their initial disclosures in this case, Plaintiffs likewise indicated their intent to rely on "[f]ile materials obtained in" the State Court Action.  *See* Plaintiffs' Initial Disclosures at 2 (Exhibit 1).

(excerpts at Exhibit 4).  In one of those conversations, Ms. Findlay offered to put Ms. Feamster's accrued paid time off toward her insurance premium.  Ms. Feamster agreed.  Ex. 4 at 27-28.

In mid-April 2008, Ms. Feamster was still on medical leave and her portion of her insurance premium was due again.  Ex. 3 (S. Feamster Dep.) at 75-76; Ex. 4 (Findlay Dep.) at 32.  As she had exhausted all sources of paid leave, RMS could not deduct her share of the premium payment from her paycheck.  Ms. Feamster and Ms. Findlay had another telephone conversation, in which Ms. Findlay informed Ms. Feamster that she needed a check for $681.51 to continue Ms. Feamster's medical insurance through the end of May.  *Id.*  Ms. Feamster delivered a check in that amount to Ms. Findlay, and her medical coverage continued.  Ex. 3 (S. Feamster Dep.) at 77; Ex. 4 (Findlay Dep.) at 31.[4]  At that time, everyone believed Ms. Feamster would be able to return to work.  Ex. 3 (S. Feamster Dep.) at 72-73; Ex. 4 (Findlay Dep.) at 32, 45.

RMS's Employee Handbook contains a provision entitled "COBRA" which sets forth the purpose of that statute, defines "qualifying events," and states that RMS will provide written notice to any eligible employee of his or her rights and obligations thereunder.  Employee Handbook at 13 (excerpts at Exhibit 5).  At the time Ms. Feamster began working for RMS, however, RMS did not qualify for COBRA coverage, and no such written notice of rights and obligations was ever sent to the Feamsters.  Ex. 4 (Findlay Dep.) at 91-96.[5]

In late May 2008, Ms. Findlay was informed by her superiors that RMS would no longer be able to keep Ms. Feamster on its insurance plan as she was not working.  Ex. 4 (Findlay Dep.) at 79.  Accordingly, Ms. Findlay called Ms. Feamster to let her know that her medical insurance

---

[4] Thus, contrary to Plaintiffs' allegation (Doc. 13 ¶¶ 52, 54), Ms. Feamster did not submit "the applicable COBRA premium."  She submitted her share of the premium for coverage under the Plan as an employee.

[5] COBRA does not apply to small employers who employ "fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C. § 1161(b).

3

coverage would expire as of June 1, 2008.  Ex. 3 (S. Feamster Dep.) at 81-85; Ex. 4 (Findlay

Dep.) at 76-77.  At that time, Ms. Feamster asked about whether her coverage could continue

through COBRA, and Ms. Findlay informed Ms. Feamster that RMS did not have COBRA cov-

erage.  *Id.*[6]  On May 28, 2008, Ms. Feamster confirmed that information with the representatives

from MSBCBS.  Ex. 3 (S. Feamster Dep.) at 101.

### B.     Summary of Proceedings

#### 1.   State Court Action

On March 2, 2009, Plaintiffs filed suit in the Circuit Court of Greenbrier County, West

Virginia.  The state court complaint sought to recover for medical expenses incurred following

the cancellation of their medical insurance coverage by RMS.  Plaintiffs collectively asserted

four claims against the RMS and Sharon Findlay.  The first three were asserted by Ms. Feamster

and include: (1) breach of contract based upon an employee handbook, (2) breach of a duty of

good faith and fair dealing, and (3) detrimental reliance.  *See* Ex. 2 (St. Ct. Compl.)  The final

count was brought by Mr. Feamster and is based on representations allegedly made to Ms. Feam-

ster.  *Id.*  The State Court Action remains pending before Judge Rowe.

#### 2.   Federal Court Action

Plaintiffs filed the complaint instituting this action on March 5, 2010.[7]  In the operative

complaint, Plaintiffs cite the ERISA as the basis for federal jurisdiction.  Doc. 13 (Second

Amended Complaint) ¶ 8.  Four claims are currently pending before the Court:

---

[6] Defendants contend, and Plaintiffs dispute, that RMS, which had only began operations as a boarding school in September 2007, did not meet the 20-employee threshold at the time.  29 U.S.C. § 1161(b); Ex. 3 (Findlay Dep.) at 91-96.  As more fully discussed *infra*, the Court need not address any potential factual issues with regard to the number of employees to dispose of Plaintiffs' claims.

[7] The Court's recitation of the facts in its July 19, 2010 memorandum opinion and order stated that this action was instituted three days after the state court action was filed on March 2, 2009.  Doc. 48 at 1.  The Court's docket, however, reflects that this case was not filed until March 5, 2010.

(1) Count I is styled "COBRA Continuation Coverage Requirements" and asserts that Defendants failed to provide Plaintiffs with the "required notices of their rights to continuation coverage" as required by COBRA.  Doc. 13 ¶ 24.

(2) Count II is similarly styled "Failure to Provide Notice of COBRA Continuation Coverage Requirements" and states that under the plan "MSBCBS and RMS were responsible for providing COBRA coverage and informing the Plaintiffs of the availability of COBRA coverage."  *Id.* ¶ 36.

(3) Count III is captioned "Estoppel" and asserts that (i) Defendants represented to Plaintiffs that they were entitled to COBRA continuation coverage in "various employee communications" and "plan documents"; (ii) these representations were made in a fiduciary capacity; (iii) Plaintiffs detrimentally relied on Defendants' representations by not procuring other insurance coverage; and (iv) Defendants are thus estopped from "denying their obligations to provide continuation coverage under COBRA." *Id.* ¶¶ 39-44.

(4) Count IV, "Breach of Fiduciary Duty," first maintains that Defendants engaged in a number of "acts and/or omissions" that constituted breaches of fiduciary duty including without limitation: (i) determining Plaintiffs' eligibility for benefits; (ii) making the benefits determinations; (iii) providing erroneous eligibility and benefit information; (iv) mis-representing Defendant's responsibilities under the Plan; and (v) unspecified "acts and/or omissions that are disclosed by the evidence."  *Id.*  ¶ 47.  Nothing in the complaint indicates the specifics of those "acts/omissions" that supposedly constituted breaches of fiduciary duty.  The real substance of this count appears to be that "Defendants had a duty to properly inform the Plaintiffs of their COBRA rights" and a duty "not to misrepresent the true number of employees covered under the plan" and breached those duties. *Id.* ¶¶ 49, 50, 53.

In Count I, Plaintiffs seek relief in the form of:  (a) "reimbursement for all medical expenses incurred for which the Defendants should have accepted liability under their COBRA obligations"; (b) reinstatement of benefits retroactive to the qualifying event triggering the Defendants' COBRA obligations"; and (c) "an award of attorneys' fees, costs, and the statutory penalties for the Defendants' failure to provide COBRA continuation coverage."  Doc. 13 ¶¶ 26, 27, 29.  In connection with Count II, Plaintiffs again claim entitlement to "an award of attorney's fees, costs and the statutory penalties for Defendants' failure to provide notice of COBRA rights."  *Id.* ¶ 37. Counts III and IV do not include specific claims for relief, but in their "Wherefore" clause Plaintiffs pray for "reimbursement for all medical expenses incurred for which the Defendants should

have accepted liability under their COBRA obligations; reinstatement of benefits retroactive to the qualifying event triggering the Defendants' COBRA obligations; attorneys fees; costs; the statutory penalties for Defendants' failure to provide COBRA continuation coverage; and such other relief as this Court deems just and proper." *Id.* at 10-11.

RMS timely answered Plaintiffs' Second Amended Complaint and asserted, among other things, that the complaint failed to state a claim upon which relief may be granted and that Plaintiffs' claims were barred by the applicable statute of limitations.  Doc. 15 at 1 (First Defense), 6 (Third Defense).[8]  To date, and as reflected on the Court's docket, the parties have engaged in substantial and costly discovery, and a number of disputes have arisen.

MSBCBS filed a motion to dismiss the complaint on May 20, 2010.  Docs. 18, 19. MSBCBS contended that it should be dismissed from the lawsuit inasmuch as it neither administered the Plan nor served as a fiduciary.  After briefing on the motion was complete and a hearing was held, the Court denied MSBCBS's motion in substantial part.  Doc. 48.[9]  This Court observed that Plaintiffs conceded at the hearing on MSBCBS's motion to dismiss that they are bringing all of their claims under § 502(a)(3) of ERISA and were accordingly abandoning their claims for monetary relief because § 502(a)(3) only provides for equitable relief.  *Id.* at 3 n.3 (citing *Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 423 (4ᵗʰ Cir. 2005)).

### III. <u>DISCUSSION</u>

During the hearing on MSBCBS's motion to dismiss, the Court stated:  "I need to know which ERISA provisions undergird each count of the complaint."  Transcript of 7/6/10 Hearing at 11 (excerpts at Exhibit 6).  The Court pointed out, "Your complaint or amended complaint . . .

---

[8]  Defendant MSBCBS likewise asserted a statute of limitations defense in its Answer to Plaintiffs' Second Amended Complaint.  Doc. 14 at 8 (Fifth Defense).

[9]  The motion to dismiss was granted only to the extent it sought dismissal of Count V, "Misrepresentation," which the Court recognized as duplicative of Count IV.

cites Section 502(c) and COBRA for Counts I and II, but your response in this motion to dismiss says the action on those counts is brought under 502(a)(3)." *Id.* at 12.  Counsel for Plaintiffs responded, "Yes, sir.  (a)(3) is the basis for our claim." *Id.*  That is so, according to Plaintiffs' counsel, because "we believe this is one of those situations where there's nothing for the plaintiffs under (a)(1)(B), and, therefore, our only recourse is for other appropriate equitable relief . . . ." *Id.*  Plaintiffs apparently have overlooked § 502(a)(1)(A) of ERISA, which expressly provides a cause of action "*for the relief provided for in subsection (c) of this section [§ 502(c)].*"  29 U.S.C. § 1132(a)(1)(A) (emphasis added).

It may be that Plaintiffs prefer to rely § 502(a)(3) as the basis of their claims for strategic reasons.  By characterizing their COBRA claims as breaches of fiduciary duty (*see* Ex. 6 at 12), Plaintiffs may be attempting to take advantage of ERISA's express limitations period governing claims for fiduciary breach, which is more generous than the statute of limitations applicable to COBRA claims.  *See* 29 U.S.C. § 1113.  Further, despite repeated assurances in connection with the state court litigation that such information would be forthcoming, Plaintiffs have yet to provide any evidence of unpaid medical bills.  Their eagerness to abandon any claim for money damages certainly makes sense if they cannot prove such damages.  In that event, the potential equitable remedy of reinstatement to the Plan could be, so to speak, the only game in town.

Unfortunately for the Plaintiffs, ERISA does not permit litigants to pick and choose from among the provisions of the statute's civil enforcement scheme.  Section 502(c), enforceable under § 502(a)(1)(A), authorizes remedies for violations of COBRA's notice rules:  A plan administrator who fails to comply with those rules "may in the court's discretion be personally liable to such participant or beneficiary in the amount of [$110] a day from the date of such failure, and the court may in its discretion order such other further relief as it deems proper."  29 U.S.C. §

1132(c)(1).  Courts applying § 502(c)(1)'s "other further relief" language have fashioned a substantive remedy for COBRA violations by ordering the plan administrator to reimburse the plaintiff for unpaid medical expenses, minus any deductibles or co-payments and premiums that the plaintiff would have had to pay if he had elected COBRA coverage.  *See, e.g.*, *Lloynd v. Hanover Foods Corp.*, 72 F. Supp. 2d 469, 479 (D. Del. 1999); *Jones v. Officemax, Inc.*, 38 F. Supp. 2d 957, 960 (D. Utah 1999); *Van Hoove v. Mid-America Building Maintenance, Inc.*, 841 F. Supp. 1523, 1536 (D. Kan. 1993).

Plaintiffs' COBRA claims (Counts I and II) arise under § 502(a)(1)(A) and § 502(c)(1) and not under § 502(a)(3).  As explained below, the limitations period applicable to such COBRA claims is one year, and this case was not filed within that period.  It is not clear what the limitations period would be for an estoppel claim (Count III), but in the Fourth Circuit an ERISA plaintiff cannot rely on principles of estoppel to obtain relief that is not available to him under the statute itself.  Further, the only possible provision of ERISA that could undergird Count III is § 502(a)(3), which also is the stated basis for Count IV, breach of fiduciary duty.  It is well settled, however, that ERISA plaintiffs cannot rely on § 502(a)(3) where another provision of § 502(a) provides an adequate remedy for the specific harm alleged.  Finally, even if § 502(a)(3) were available to the Plaintiffs in the circumstances of this case, Counts III and IV would fail for lack of an available remedy.  It follows that RMS is entitled to summary judgment dismissing the complaint with prejudice.

A.    **Plaintiffs' COBRA Claims Are Barred by the One-Year Statute of Limitations Borrowed from West Virginia Law**

Generally, under COBRA a former employee is entitled to elect to obtain continued health insurance coverage at favorable rates, for a period of up to 18 months after a "qualifying event" occurs.  29 U.S.C. §§ 1161, 1162(2)(A)(i).  COBRA contains certain notice provisions

that mandate that an employee/beneficiary be provided with notice of his or her COBRA election rights after that qualifying event takes place. *See* 29 U.S.C. § 1166(a)(4). Here, Plaintiffs contend that they were not informed of their option to elect coverage as required by COBRA. Plaintiffs' COBRA claims, however, fail as they were not timely brought. Specifically, summary judgment in favor of RMS is dictated by this Court's application of the statute of limitations to dispose of a former employee's similar COBRA notification claims in *Harvey v. Mingo Logan Coal Co.*, 274 F. Supp. 2d 791 (S.D. W. Va. 2003) (Goodwin, J.).

### 1. The Applicable Statute of Limitations

Because neither COBRA nor ERISA contains an express statute of limitations for COBRA claims, the Court must borrow the statute of limitations period from the state law cause of action that is most analogous to the federal claim. *Harvey*, 274 F. Supp. 2d at 793; *see also White v. Sun Life Assurance Co. of Can.,* 488 F.3d 240, 245 (4th Cir. 2007). In *Harvey*, this Court found that the West Virginia state law cause of action that was most analogous to a federal COBRA notice claim was a claim under the West Virginia Unfair Trade Practices Act because (1) both claims related to the provision of insurance and (2) both claims are statutory in nature. *Harvey*, 274 F. Supp. 2d at 795 (discussing *Myers v. King's Daughters Clinic,* 912 F. Supp. 233, 237 (W.D. Tex.), *aff'd*, 96 F.3d 1445 (5th Cir. 1996)).

Arriving at this result, this Court expressly rejected the notion that a COBRA notice claim could be analogized to a breach of contract claim under West Virginia common law (and therefore governed by a longer limitations period) because the duty to provide notice was, unlike a contract, not privately negotiated but instead mandated by statute. *Id.* at 794-95 (*citing Mattson v. Farrell Distrib. Corp.,* 163 F. Supp. 2d 411, 418 (D. Vt. 2001)). Accordingly, the court applied the one-year statute of limitations governing an unfair insurance practices claim under West Virginia law to bar the plaintiff employee's COBRA notification claim arising out of the

9

termination of his employment, which had occurred nearly two years prior to his institution of the action. *Id.* at 795. On appeal, the Fourth Circuit affirmed this Court's reasoning. *Harvey v. Mingo Logan Coal Co.*, 104 Fed. Appx. 838, 840 n.4 (4th Cir. 2004) (unpublished).

*Harvey* is consistent with a number of other federal courts' determinations that the statute of limitations for a COBRA claim is borrowed from an unfair insurance practices claim under state law. *Myers,* 912 F. Supp. at 237 (cited in *Harvey* and reasoning that the failure to provide the statutory notice required under COBRA is similar to an unfair insurance practice because an employer's duty under COBRA is related to the provision of insurance coverage so the statute of limitations found in the unfair insurance practices section of the Texas Insurance Code applied to COBRA notice claim); *Mattson,* 163 F. Supp. 2d at 418 (not addressing applicability of unfair insurance practice claim under state law, but observing that COBRA notice claim is not analogous to a contract action); *Carter v. General Elec. Co.*, 2000 WL 321663 (N.D. Ill. Mar. 21, 2000) (cited in *Harvey*); s*ee also Lopez v. Premium Auto Acceptance Co.*, 389 F.3d 504, 509-10 (5th Cir. 2004) (citing *Harvey* and holding COBRA claim barred by statute of limitations borrowed from Texas unfair insurance practice claim).

### 2. Accrual of Plaintiffs' COBRA Claims

Any question as to when a federal cause of action accrues is resolved by federal law, with the general rule being that the cause of action accrues when the plaintiff knows or should know that a violation of his or her rights has occurred. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996); *Nasim v. Warden, Md. House of Correction,* 64 F.3d 951, 955 (4th Cir. 1995) (en banc).[10]

---

[10] In *Harvey*, the Court did not take up the issue of when the COBRA notification claim accrued as it appears that there were no accrual or tolling issues before the Court. The Court's application of the statute of limitations, however, suggests that a COBRA notification claim would accrue at the time of the qualifying event, which in that action was termination of the plaintiff's employment. *See Harvey*, 274 F.

As stated at the outset of this section, COBRA provides that a former employee generally is entitled to elect to obtain continued health insurance coverage at favorable rates for a period of up to 18 months after a "qualifying event" occurs.  29 U.S.C. §§ 1161, 1162(2)(A)(i).  Under a single employer plan, COBRA provides that an employer of an employee covered under a plan must notify the administrator of the plan of certain "qualifying events" within thirty (30) days of the event.  29 U.S.C. § 1161(a)(2).  The termination of employment or reduction of hours is a qualifying event under COBRA if such termination or reduction of hours results in a loss of coverage under the employer's plan.  *See* 29 U.S.C. § 1163(2).  After receiving notice from the employer, the plan administrator, in turn, has 14 days to notify the employee of her COBRA rights.  *See* 29 U.S.C. § 1166(a)(4).  Where, as here, the employer is also serving as the plan administrator, the employer has a total of 44 days from the date of the qualifying event to notify the beneficiary of his or her COBRA rights.  *See, e.g.*, *Villanueva v. Lambert*, 339 F. Supp. 2d 351, 358-59 (D.P.R. 2004).  Leaving aside the question of whether RMS was even required to provide COBRA coverage, Plaintiffs' loss of coverage under the Plan occurred on May 31, 2008.[11] RMS, as both employer and plan administrator, would have to provide the Feamsters with notice of their COBRA rights on or before July 14, 2008 – the 44th day thereafter.

As of July 15, 2008, it is undisputed that Ms. Feamster was (1) aware that RMS would not be offering COBRA coverage (and any accompanying notice about electing coverage) and (2) admittedly not in receipt of the COBRA notices that were allegedly due.  Ex. 3 (S. Feamster

---

Supp. 2d at 795 ("Harvey filed his claim on September 26, 2002, well over a year after his cause of action arose upon his September 28, 2000 termination.  Because Harvey's COBRA claims are time-barred, the court GRANTS Mingo's motion for partial summary judgment.").

[11] Ms. Feamster incurred a "reduction of hours" March 2008 when she stopped working for medical reasons, and this could be considered a "qualifying event" under COBRA.  *See* 29 U.S.C. § 1163.  Inasmuch as this potential "qualifying event" occurred prior to the termination of Ms. Feamster's employment, it would mean that Plaintiffs' COBRA claims would have accrued at an even earlier date.

Dep.) at 102.  Given these facts, the Feamsters knew, or should have known that their COBRA notice rights (if any) had been violated on July 15, 2008.  Therefore, any cause of action based on the purported failure of RMS to fulfill its COBRA notice obligations accrued no later than July 15, 2008.  *See Piercefield v. Int'l Truck & Engine Corp.*, 2006 WL 2263985 at *2-3 (S.D. Ind. Aug. 7, 2006) (where the "qualifying event" was termination of employment, the former employee's COBRA notice claim accrued no later than the 45th day after termination).  Applying the one-year statute of limitations adopted in *Harvey*, Plaintiffs' COBRA claims are barred because they were not brought within the one-year of the July 15, 2008 accrual date.  RMS is thus entitled to summary judgment on Counts I and II of the Second Amended Complaint.[12]

**B.**      **RMS Is Entitled to Summary Judgment on Plaintiffs' Equitable Estoppel Claim**

Count III is styled "estoppel" and relates to Defendants' purported misrepresentations in "various employee communications and in plan documents" that Plaintiffs were entitled to COBRA coverage.  Doc. 13 ¶ 40.  According to Plaintiffs, Defendants are "estopped from denying their obligations to provide continuation coverage under COBRA."  *Id.* ¶ 44.

---

[12] The filing of the State Court Action did not toll the statue of limitations on Plaintiffs' COBRA claims.  In *Shofer v. Hack*, 970 F.2d 1316 (4th Cir. 1992), the employee timely filed a state court action arising out of the employee's receipt of allegedly improper advice from the plan administrator about the tax consequences of borrowing from a pension plan.  *Id.* at 1317-18.  All of the employee's state court claims were dismissed as preempted by ERISA and/or within the exclusive jurisdiction of a federal court. *Id.* at 1318.  Thereafter, the employee brought, in essence, an ERISA claim for breach of fiduciary duty in federal court.  *Id.*  The claim was filed beyond the applicable three year limitations period, but the employee contended that the filing of the state court action tolled the running of the statute.  *Id.* at 1318.  The district court found that the employee's ERISA claim was barred by the statute of limitations, *id.*, and the Fourth Circuit affirmed:  "The commencement of an action in . . . a court that clearly lacks jurisdiction will not toll the statute of limitations."  *Id.* at 1319; *see also* 29 U.S.C. § 1132(e)(1) (federal district courts have *exclusive* jurisdiction of claims brought under ERISA with the exception of claims for benefits under the plan's terms).  To the extent the State Court Action reflects an attempt to remedy RMS's alleged COBRA violations, it was similarly pursued "in court that clearly lacks jusidiction," as state courts lack jurisdiction of COBRA claims.  Thus, under *Shofer* the filing of the State Court Action did not toll the statute of limitations on Plaintiffs' COBRA claims.

At the hearing on MSBCBS's motion to dismiss, Plaintiffs' counsel conceded that they were not bringing the estoppel claim under state law. Ex. 6 at 13.[13]  Upon the Court's inquiry as to whether the Fourth Circuit allowed such a claim as a matter of federal common law, Plaintiffs' counsel stated that "[i]t is not an issue that's been considered by the Fourth Circuit." *Id.*  Plaintiffs' counsel further indicated that the estoppel claim was supported by (1) "a relatively recent Supreme Court decision whereby numerical thresholds are not deemed to be jurisdictional" and (2) a Sixth Circuit decision following that Supreme Court case.  Count III fails because (1) the Fourth Circuit does not recognize estoppel as a viable cause of action under the common law of ERISA and (2) even if it were a recognized cause of action in this Circuit, Plaintiffs cannot satisfy the elements of an estoppel claim.

The Sixth Circuit decision upon which Plaintiffs base Count III is *Thomas v. Miller*, 489 F.3d 293 (6th Cir. 2007).  There, the plaintiff employee overheard a conversation suggesting that a fellow employee was offered COBRA benefits.  *Id.* at 302.  The employer then failed to offer COBRA benefits to the plaintiff employee after she was terminated, and in the subsequent suit maintained that it was not subject to COBRA because it did not have 20 employees.  *Id.*  The district court dismissed the action for lack of authority supporting the position that the employer had waived its right to rely on the 20-employee threshold.  On appeal, the Sixth Circuit first noted the Supreme Court decision holding that the numerical threshold for meeting Title VII coverage was an element of a claim, as opposed to a jurisdictional bar.  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006).[14]  Relying on that decision and noting that it had previously held that equitable

---

[13]  It cannot be disputed that any state law estoppel/detrimental reliance claim would be preempted.  *See Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001); *Conner v. Elkem Metals Co.*, 2008 WL 5122197, at **3-4 (S.D. W. Va. Dec. 5, 2008) (Johnston, J.); *Miller v. U.S. Foodservice, Inc.*, 323 F. Supp. 2d 665, 669 (D. Md. 2004).

[14]  *Arbaugh* held that "the employee-numerosity requirement [for establishing the respondent's "employer" status] does not circumscribe federal-court subject-matter jurisdiction.  Instead, the em-

estoppel could apply to ERISA welfare benefit cases in certain circumstances, the Sixth Circuit held that a district court may consider whether an employer can be estopped from denying that it is a covered employer under COBRA. On the record before it, however, the court agreed with the district court that the plaintiff had not satisfied the estoppel doctrine's requirements. *Thomas*, 489 F.3d at 295.

*Thomas* is not consistent with the Fourth Circuit Law.[15] In a decision subsequent to *Thomas*, the Fourth Circuit has observed that a plaintiff cannot "rely on the federal common law under ERISA, which does not incorporate the principles of waiver and estoppel." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 238 (4th Cir. 2008). Indeed, the Sixth Circuit has cited *Gagliano* for the proposition that the Fourth Circuit "considers waiver and estoppel to be 'prohibited concepts' with respect to ERISA." *Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 441 n.3 (6th Cir. 2010).

Even if *Thomas* were consistent with Fourth Circuit law, Plaintiffs' estoppel claim nevertheless would fail. In the Sixth Circuit, among other things, "the party asserting estoppel must have detrimentally and justifiably relied on the representation." *Thomas*, 489 F.3d at 302. The "representation" in this case allegedly is that the Plaintiffs "were entitled to COBRA continuation coverage." Doc. 13 ¶ 39. The alleged detrimental reliance is that the Plaintiffs "did not procure other insurance coverage because they relied upon the Defendants' representations that the

---

ployee-numerosity requirement relates to the substantive adequacy of Arbaugh's Title VII claim, and therefore could not be raised defensively late in the lawsuit, *i.e.*, after Y & H had failed to assert the objection prior to the close of trial on the merits." 546 U.S. at 504. In this case, of course, RMS has contended all along that it was exempt from COBRA under the small-employer exception. *See* Doc. 15 ¶¶ 22, 23, 24. Thus, the circumstances of *Arbaugh* were not analogous to those presented here.

[15] In opposing MSBCBS's motion to dismiss, Plaintiffs contended that their estoppel claim is not an attempt to modify the terms of the Plan. Doc. 20 at 16. Yet at the hearing on the motion, they insisted that COBRA administration "was not part of this Plan" and the Plaintiffs did not have a claim under § 502(a)(1)(B) of ERISA, which authorizes the recovery of benefits due under plan terms. Ex. 6 at 12. It follows, of course, that they *are* attempting to modify or supplement the Plan's terms via estoppel.

Plaintiffs had insurance coverage." *Id.* ¶ 43.  But Ms. Feamster testified that she was, in fact, told that she did *not* have COBRA coverage, and that she did not purchase alternative coverage because it was too expensive.  Ex. 3 (S. Feamster Dep.) at 103; *see also* Ex. 7 (C. Feamster Dep.) at 11.

Further, the only "representation" that Plaintiffs can point to appears in RMS's employee handbook, described above.  Ms. Feamster would be hard pressed to argue that she relied on that provision in deciding to accept RMS's offer of employment, as she did not see the handbook until well after she had accepted the offer.  Ex. 3 (S. Feamster Dep.) at 35-36.  In addition, Ms. Feamster cannot plausibly contend that any reliance on the COBRA provision in the employee handbook would have been justified.  RMS clearly and repeatedly disclaimed that any contract was created by any provision contained within the employee handbook.  Ex. 5 at 6.  Ms. Feamster signed an acknowledgment to this effect as well.  *See* Exhibit 8.  She does not even allege that she read the COBRA provision, and, again, when she finally asked about COBRA coverage specifically, she was correctly informed that that coverage was not available.  In short, Plaintiffs' equitable estoppel claim would fail even in the Sixth Circuit.

## C.   A Claim Under § 502(a)(3), whether for Breach of Fiduciary Duty or Estoppel, Is Unavailable in the Circumstances of this Case

The U.S. Supreme Court routinely describes ERISA as a "comprehensive and reticu-lated" statute.  *E.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002).  The limited remedies available under the civil enforcement provisions of § 502(a) are integral to ERISA's statutory scheme.  Upon review of the statute and its legislative history, the Supreme Court concluded that Congress acted deliberately in limiting § 502(a)'s remedies:  "The six care-fully integrated civil enforcement provisions found in § 502(a) of the statute . . . provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incor-

porate expressly." *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985); *accord, e.g.*, *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (5th Cir. 1996).

During the hearing on Defendant MSBCBS's motion to dismiss, counsel for Plaintiffs advised the court that Plaintiffs' claim for breach of fiduciary duty arises under § 502(a)(3) of ERISA. Ex. 6 at 12.[16] That is the only possibility. Claims for breach of fiduciary duty under ERISA are cognizable, if at all, only under § 502(a)(2) or § 503(a)(3) of ERISA. Section 502(a)(2), however, is not available to the Plaintiffs in the circumstances of this case. "It has long been settled that 'any recovery under § 502(a)(2) must be for the plan as a whole rather than for individual beneficiaries.'" *Tingler v. Unum Life Ins. Co.*, 2003 WL 1746202, at *4 (S.D. W. Va. Apr. 2, 2003) (Goodwin, J.). Because these Plaintiffs are suing as individual beneficiaries, and not for plan-wide relief, they cannot proceed under § 502(a)(2) against either of the Defendants. Similarly, a claim based on federal common law principles of estoppel (if, indeed, any such claim exists at all in the Fourth Circuit) can only arise under § 501(a)(3), as that is the broadest of ERISA's "carefully integrated civil enforcement provisions" that is available to private plaintiffs. Plaintiffs have not identified any other possible basis for their estoppel claim.

In *Varity Corp. v. Howe,* 516 U.S. 489 (1996), the Supreme Court held that § 502(a)(3) is a "catch-all" provision that may be invoked to remedy violations of ERISA for which a specific remedy is not provided. In *Varity* itself, the violation was a breach of fiduciary duty – the fiduciary had lied to the plan's participants about the nature and security of future benefits. Yet, since the plaintiffs were not seeking plan-wide relief, they had no remedy under § 502(a)(2).

---

[16] Under § 502(a)(3), plan participants and beneficiaries may bring a civil action to enjoin acts or practices that violate ERISA or the plan's terms or to seek "other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title." 29 U.S.C. § 1132(a)(3).

Nor could they sue under § 502(a)(1)(B), as it was undisputed that they were *not* entitled to benefits under the plan's terms. In those circumstances, the Court concluded that the plaintiffs could base their claims on § 502(a)(3) and seek "appropriate equitable relief." The Court stressed, however, that "where Congress elsewhere provided adequate relief for a beneficiary's injury," there is no need for further equitable relief. *Varity Corp.*, 516 U.S. at 515. ERISA plaintiffs could not, then, avoid the drawbacks of a § 502(a)(1)(B) claim – such as the deferential standard of review, the exhaustion requirement, and the inability of claimants to increase the case's settlement value by subjecting defendants to unduly expensive and burdensome discovery – by repackaging a claim for benefits as a breach of fiduciary duty. The lower courts since *Varity* routinely have precluded plaintiffs from doing just that. *E.g.*, *Korotnska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 102-03 (4th Cir. 2006); *Antolik v. Saks, Inc.*, 463 F.3d 796, 802 (8th Cir. 2005); *Coyne & Delany*, 102 F.3d at 716; *Tingler*, 2003 WL 1746202, at *4.[17]

Plaintiffs here have been quick to point out that they do not have a claim under § 502(a)(1)(B). But it does not follow that they can proceed under § 502(a)(3). Plaintiffs' estoppel and breach of fiduciary duty claims both stem from Defendants' allegedly wrongful failure to offer COBRA coverage. For those claims, Plaintiffs are seeking the same relief that they claim to be entitled to in connection with the COBRA claims pleaded in Counts I and II. In §§ 502(a)(1)(A) and 502(c) Congress has provided a remedy for the wrongful failure to offer COBRA coverage, as explained above. Having missed the statute of limitations applicable to the remedy Congress has chosen, Plaintiffs cannot revive their claim by invoking § 502(a)(3).

---

[17] In a pre-*Varity* COBRA decision, Chief Judge Haden awarded equitable relief under § 502(a)(3) in addition to reimbursement for unpaid medical expenses offset by co-pays and premiums. *Ward v. Bethenergy Mines, Inc.*, 851 F. Supp. 325 (S.D. W. Va. 1994). Specifically, Judge Haden directed the employer to take steps to remedy any harm to the plaintiff's credit rating that resulted from his delay in paying his medical bills. Plaintiffs here have requested no such remedy, and it is doubtful in any event that *Ward* would have been decided the same way after *Varity*.

**D.**   **Counts III and IV of the Second Amended Complaint also Fail for Lack of an Available Remedy**

Again, Plaintiffs' prayer for relief seeks "reimbursement for all medical expenses incurred for which the Defendants should have accepted liability under their COBRA obligations" and "reinstatement of benefits retroactive to the qualifying event triggering the Defendants' CObRA obligations." Doc. 13 at 10. Without question, reimbursement for medical expenses constitutes money damages, and is *not* "appropriate equitable relief" within the meaning of § 502(a)(3). For purposes of § 502(a)(3), "equitable relief" refers to "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)." *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993); *accord Sereboff v. Mid Atlantic Med. Servs. Inc.*, 547 U.S. 356, 361 (2006); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002). Plaintiffs cannot, then, recover compensation for their medical expenses through the mechanism of a claim under § 502(a)(3).

Reinstatement in the Plan also is not an option. Sandra Feamster is no longer employed by RMS. She has neither worked nor sought employment since March 2008 when she stopped working at RMS due to her health. State Court Action Answers to Defendants' First Set of Interrogatories at 12 (excerpts at Exhibit 9). Further, it appears that Ms. Feamster is not physically able to work, as she is receiving Social Security Disability Income benefits. Ex. 3 (S. Feamster Dep.) at 110-11. Moreover, by its terms, the Plan covers only "Eligible Employees" and excludes from that definition "any employee who is in non-active work status." Group Contract at 2 (excerpts at Exhibit 10). RMS is aware of no precedent for ordering a plan sponsor to reinstate to employment a former employee who cannot work as a remedy for a breach of fiduciary duty.

Plaintiffs' reliance on *Griggs v. E.I. DuPont Nemours & Co.*, 237 F.3d 371 (4th Cir. 2000), in this context is misplaced. *See* Ex. 6 (hearing transcript) at 12. Analogizing to identical

18

language in Title VII, the *Griggs* court did state, "We believe that reinstatement, as a general equitable concept, is within the range of redress permitted by the phrase 'other appropriate equitable relief' within the meaning § 502(a)(3)." 237 F.3d at 385.  But, consistent with the Supreme Court's decision in *Varity* discussed above, the court went on to stress that "even if the redress sought by a beneficiary under ERISA § 502(a)(3) is a classic form of equitable relief, it must be *appropriate* under the circumstances." *Id.*  "For example," the court continued, "such relief is not 'appropriate' equitable relief 'where Congress elsewhere provided adequate relief for a beneficiary's injury' and there is 'no need for further equitable relief.'"  *Id.* (quoting *Varity Corp.*, 516 U.S. at 515).[18]  Further, "reinstatement might not be appropriate equitable relief within the Title VII context where circumstances have changed substantially such that reinstatement would require removing a[] current employee." *Id.*  Significantly, in *Griggs* the court of appeals did *not* order the district court to award the equitable remedy sought, but remanded with directions that the district court explore whether such a remedy was "appropriate" in the circumstances.[19]

That reinstatement to the Plan is not "appropriate equitable relief" for the Plaintiffs is further confirmed by the fact that that remedy would place the Plaintiffs in a *better* position than they would have occupied if they had elected COBRA coverage.  COBRA qualified beneficiaries are entitled to continued coverage under their employer's plan, but they are required to pay the entire premium for such coverage, and the maximum period for continuation coverage generally is 18 months.  Reinstatement in the Plan, however, would mean that these Plaintiffs would be required to pay only their share of premiums and, presumably, such coverage would continue

---

[18] In *Griggs*, as in *Varity Corp.*, the plaintiff's "breach of fiduciary duty claim is remedied under section 502(a)(3), or it is not remedied at all." *Id.* at 385 n.7.

[19] In subsequent proceedings, the court of appeals held that the *Griggs* plaintiff could rescind his election to receive his benefit in the form of a lump sum and be permitted instead to elect the plan's lifetime annuity option. *Griggs v. I.E. DuPont de Newmours & Co.*, 385 F.3d 440 (4th Cir. 2004).

indefinitely.  Section 502(c)'s remedies, as fashioned by the courts, are designed to place the plaintiff in the position he would have occupied had he elected COBRA coverage (plus, in the court's discretion, daily monetary penalties).  Such an ERISA plaintiff cannot, by allowing his claim under § 502(c) to lapse, obtain *greater* relief under § 502(a)(3) than ERISA authorizes for the specific harm alleged.

Because "Congress clearly contemplated plaintiffs like [the Feamsters] and explicitly created remedies for them within the text of the statute itself," the court "may not disregard Congress's decision to limit the scope of those remedies."  *Rego v. Westvaco Corp.*, 318 F.3d 140, 148 (4th Cir. 2003).

## IV.  CONCLUSION

For all of the foregoing reasons, RMS's motion for summary judgment should be granted.

Dated October 5, 2010.

Respectfully submitted:


s/   Sara E. Hauptfuehrer
Sara E. Hauptfuehrer (WV Bar No. 8931)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8195

Jan L. Fox (WV Bar No. 1259)
J.A. Curia III (WV Bar No. 10043)
STEPTOE & JOHNSON PLLC
Eighth Floor, Chase Tower
P.O. Box 1588
Charleston, WV 25326-1588
(304) 353-800

*Counsel for Defendant*
*Relational Management Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 5, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

> Jeffrey V. Mehalic
> 2011 Quarrier Street
> P.O. Box 11133
> Charleston, WV 25339-1333
>
> Robert J. Kent
> Bowles Rice McDavid Graff & Love LLP
> Fifth Floor, United Square
> P.O. Box 49
> Charleston, WV 26102
>
> Roy F. Harmon III
> Harmon & Major
> P.O. Box 8954
> Greenville, SC 29604

> <u>s/   Sara E. Hauptfuehrer</u>
> Sara E. Hauptfuehrer (WV Bar No. 8931)
> STEPTOE & JOHNSON PLLC
> 400 White Oaks Boulevard
> Bridgeport, WV 26330
> (304) 933-8195