**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**PARKERSBURG**

**CONN FEAMSTER and**
**SANDRA FEAMSTER,**

      **Plaintiffs,**

**vs.**                                         **Civil Action No. 6:10-cv-241**
                                                   **Chief Judge Goodwin**

**HIGHMARK WEST VIRGINIA INC.**
**d/b/a MOUNTAIN STATE BLUE CROSS**
**& BLUE SHIELD and RELATIONAL**
**MANAGEMENT SERVICES, LLC,**

      **Defendants.**

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**DEFENDANT RELATIONAL MANAGEMENT SERVICES, LLC'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

**I.**        <u>**INTRODUCTION**</u>

      Defendant Relational Management Services, LLC ("RMS") submits this reply memorandum in support of its motion for summary judgment.  In its moving papers, RMS demonstrated that it is entitled to summary judgment dismissing the complaint with prejudice because (1) Plaintiffs' COBRA claims (Counts I and II) are time-barred under the applicable one-year statute of limitations; (2) in the Fourth Circuit a plaintiff cannot rely on federal common law under ERISA for an estoppel claim (Count III), and Plaintiffs could not satisfy the elements of such a claim in any event; (3) plaintiffs may not maintain an action under § 502(a)(3) of ERISA, either for breach of fiduciary duty (Count IV) or to enforce the federal common law of estoppel (if such a thing existed) (Count III) where, as here, another more specific provision of ERISA's civil enforcement scheme applies to the claim; and (4) even if the

Plaintiffs could proceed under § 502(a)(3), such claims would fail for lack of an available remedy (Counts III and IV).

In their response to RMS's motion, Plaintiffs contend that they need to conduct additional discovery to adequately respond to the motion.  Doc. 103 & Ex. H.  More specifically, Plaintiffs contend, purely in conclusory terms, that further discovery is needed as follows:

1. Representations made by RMS to the Plaintiffs that RMS was not subject to COBRA "create a fact issue that requires discovery on the equitable principles that toll the limitations period."  Ex. H. ¶ 5.

2. Discovery is required to "develop a factual record as to feasibility and appropriateness of the remedy" of reinstatement of the Plaintiffs to the plan "and the appropriateness of equitable relief under 29 U.S.C. § 1132(a)(3)."  *Id.* ¶ 6.

3. "Estoppel requires evaluation of representations and reliance, and factual issues inhere in evaluation of this remedy.  This is particularly important on the question of when the limitation period begins to run, but also to a substantive remedy."  *Id.* ¶ 7.

4. Whether "the equitable remedy of reinstatement under 29 U.S.C. § 1132(c)(1) would be identical to the remedy of reimbursement under 29 U.S.C. § 1132(a)(3) . . . depends on an evaluation [of] the factual record which is incomplete."  *Id.* ¶ 8.

Because none of Plaintiffs' arguments is well taken, RMS's motion for summary judgment should be granted.

## II.     DISCUSSION

**A.     <u>Plaintiffs Are Not Entitled to Rule 56(f) Relief as a Matter of Course but Must Clearly Identify The Information They Seek and Explain How it Would Prevent the Entry of Summary Judgment</u>**

Rule 56(f) of the Federal Rules of Civil Procedure provides in pertinent part that "[i]f a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."  As explained by the leading commentators, "Rule 56(f) protects a

party opposing a summary judgment motion who for valid reasons cannot by affidavit – or presumably by other means authorized under Rule 56(e) – present 'facts essential to justify the adverse party's opposition' to the motion.'"  10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2740, at 397 (1998).

It is well established that "[i]n making a Rule 56(f) motion, a party opposing summary judgment must make clear what information is sought and how it would preclude summary judgment." *Margolis v. Ryan,* 140 F.3d 850, 853 (9th Cir. 1998); *see also Goodell v. Rehrig Intern., Inc.*, 683 F. Supp 1051, 1054 (E.D. Va. 1988).  Accordingly, it is not an abuse of discretion for a district court to deny a discovery request under Rule 56(f) when the party "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery . . . " and "when the affidavit lacks 'any details' or 'specificity.'" *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2004) (citations omitted); *see also Strag v. Board of Trustees*, 55 F.3d 943, 954 (4th Cir. 1995) ("district courts have great discretion over the discovery process and over the mechanics of the trial process," such that their decisions denying Rule 56(f) motions are reviewable only for abuse of discretion.).  As set forth below, Plaintiffs have not shown by affidavit how any missing discovery would preclude summary judgment on the grounds raised by RMS in its initial briefing.

Nowhere in either the Rule 56(f) affidavit or the response brief do the Plaintiffs provide any insight into what facts they expect further discovery would bring to light that would affect the outcome of RMS's motion.[1]  It is undisputed, as Plaintiffs recognize (Doc. 103 Ex. H ¶ 5),

---

[1]    To date, Plaintiffs' discovery efforts have focused on attempting to combine various entities into a single employer for purposes of COBRA's small employer exemption and to find out whether and to what extent RMS has the means to satisfy a judgment in any substantial amount. Plaintiffs' interest in those topics is plain from their statement of facts.  Doc. 103 at 3-5.  Even after RMS filed the instant motion, Plaintiffs' discovery efforts have continued exclusively along those lines.

that RMS told the Plaintiffs that it was not subject to COBRA. No discovery is needed on RMS's representations, then. Further, any facts concerning the Plaintiffs' reliance on RMS's representations are exclusively within possession of the Plaintiffs themselves. Only they know whether, why, and how they relied on RMS's representations concerning COBRA coverage, and only they can prove that they were harmed as a result of any such reliance.

To defeat a properly supported motion for summary judgment, it is not enough for the non-moving party simply to invoke Rule 56(f) and insist, even via affidavit, that additional discovery is necessary. Moreover, Plaintiffs' protests of an inadequate opportunity to conduct discovery are not only ineffective, but they are based on fundamental mischaracterizations of the record, the case law, and RMS's arguments, as explained below.

**B.     Plaintiffs' Have Failed to Challenge the Law and Material Facts Governing the Statute of Limitations Analysis of Their COBRA Claim**

Plaintiffs' own briefing concedes the facts and law that are germane to the resolution of the COBRA statute of limitations issue. First, Plaintiffs admit that in May of 2008, they were aware that they were not being provided with COBRA coverage:

> In May 2008, RMS advised Plaintiff Sandra Feamster that the plan was exempt from COBRA continuation coverage requirements because of the 'small employer exception. On May 22, 2008, a representative of MSBCBS also stated that the Plaintiffs were not entitled to COBRA continuation coverage.

Doc. 103 at 5-6. It is further undisputed that Plaintiffs did not institute this federal action until March 5, 2010.

With respect to the law, Plaintiffs readily admit that their COBRA claim is governed by a one-year statute of limitations. As Plaintiffs also concede, statute of limitations questions involving accrual issues are resolved by looking to federal, not state, law. *See Braxton v. Joynes*, 2005 WL 2249865 (S.D. W. Va. Sept. 14, 2005) (Chambers, J.) (observing that "[t]hough the applicable statute of limitation is found by looking to state law, when that time begins to accrue

is a question of federal law).[2]  Plaintiffs fail, however, to offer any substantive discussion as to when their COBRA claim accrues.  The general rule is that the cause of action accrues when the plaintiff knows or should know that a violation of his or her rights has occurred.  *See Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996); *Nasim v. Warden, Md. House of Correction,* 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

As set forth in RMS's opening brief, Plaintiffs' loss of coverage under the Plan occurred on May 31, 2008.  RMS, as both employer and plan administrator, would therefore have to provide Plaintiffs with notice of their COBRA rights on or before July 14, 2008 – the 44th day after the loss of coverage.  *See* 29 U.S.C. §§ 1161, 1161(a)(2), 1162(2)(A)(i), 1163(2), 1166(a)(4).  Plaintiffs knew in May of 2008 that they were not being offered COBRA coverage and consequently they were aware that they would not receive notice of their ability to obtain COBRA coverage.  Accordingly, the statute of limitation began to run at that time.

Plaintiffs do not dispute that on July 14, 2008, Ms. Feamster was (1) aware that RMS would not be offering COBRA coverage (and any accompanying notice about electing coverage) and (2) admittedly not in receipt of the COBRA notices that were allegedly due.  Accordingly, Plaintiffs' COBRA claim accrued no later than July 15, 2008.  *See Pierce v. Visteon Corp.*, 2007

---

[2]        Plaintiffs state that they "agree that . . . the date on which the statute begins to run is governed by a uniform federal rule rather than the laws of the states."  Doc. 103 at 13.  Plaintiffs then proceed to reference West Virginia law when discussing their proposed equitable modification of the one-year statute of limitation on their COBRA claim.  *Id.* at 14 n.29.  With respect to Plaintiffs' observation that federal law and West Virginia law are quite similar when addressing equitable modification of the statute of limitations, RMS agrees.  Both West Virginia and the Fourth Circuit have a similar take on the application of equitable principles to toll the statute of limitations – they provide an extraordinary remedy and "should be applied cautiously, only when equity clearly requires that it be done."  *Samsell v. State Line Development Co.,* 174 S.E.2d 318, Syl. Pt. 7; *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) ("rarely will circumstances warrant equitable tolling.").  But federal law plainly controls the issue – it makes no sense that state law would control principles of equitable tolling and equitable estoppel when federal law unquestionably controls accrual of the cause of action.

WL 2986123, *5 (S.D. Ind. 2007) ("The statute of limitations period . . . under 29 U.S.C. § 1166 accrues on the forty-fifth day following any individual's triggering event.").

**1.      Application of Equitable Principles Are of No Assistance to the Plaintiffs**

In their response, Plaintiffs offer no evidence or legal authority that refutes RMS's position that July 15, 2008, is the date that their COBRA claim accrued.  Instead, Plaintiffs opaquely insist that "[a]pplication of equitable principles requires decision on material factual issues."  Doc. 103 at 15.  Whether Plaintiffs are maintaining that they have an independent cause of action based on equitable estoppel as a "substantive remedy" or they are asserting that the principles of equitable estoppel apply in the context of a statute of limitations analysis, equitable estoppel is of no assistance to them.

The Fourth Circuit has observed that a plaintiff cannot "rely on the federal common law under ERISA, which does not incorporate the principles of waiver and estoppel."  *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 238 (4th Cir. 2008) (cited authority omitted).[3] Plaintiffs have not directed this Court to any authority that suggests the Fourth Circuit's binding decision in *Gagliano* can be cast aside.[4]  Thus, any independent estoppel claim or equitable estoppel statute of limitation arguments are foreclosed as a matter of law, and there is no potential discovery that can assist Plaintiffs in overcoming this obstacle.

---

[3]      As set forth in RMS's opening brief, Plaintiffs have conceded that they are not bringing the purported estoppel claim under state law.  Accordingly, federal law can be the only source of any estoppel cause of action.

[4]      Plaintiffs cite a district court case, *Connolly v. Mills Corp.*, 430 F. Supp. 2d 553 (E.D. Va. 2006), for the proposition that equitable tolling could apply in this case.  *Connolly,* was decided prior to the Fourth Circuit's decision in *Gagliano*, and involved employment discrimination, not ERISA.

2.      **Even if Applicable in an ERISA Context, the Doctrine of Equitable Tolling Does Not Alter the Conclusion that Plaintiffs' COBRA Claim is Time-Barred**

The Court could summarily dispose of Plaintiffs' equitable tolling arguments as unrecognized in this Circuit. Nevertheless, RMS observes that should this Court find that equitable tolling principles could be applied to Plaintiffs' COBRA claim under the federal common law, this case does not present one of the rare instances where equitable tolling should be permitted. *See Chao v. Va. DOT,* 291 F.3d 276, 283 (4th Cir. 2002) ("The circumstances under which equitable tolling has been permitted are . . . quite narrow.").

Generally, a litigant seeking the shelter of equitable tolling bears the burden of demonstrating that he "has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or . . . been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dept. of Veterans,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Conversely, "[e]quitable tolling is not appropriate . . . 'where the claimant failed to exercise due diligence in preserving his legal rights.'" *Chao*, 291 F.3d at 283 (quoted authority omitted). Because Plaintiffs did not file their complaint within the one-year limitations period, Plaintiffs must demonstrate that RMS tricked or induced Plaintiffs into bringing their claim beyond the one-year statute of limitations. To do so, Plaintiffs must show that "(1) [RMS] fraudulently concealed facts that are the basis of the [P]laintiff[s'] claim, and (2) the [P]laintiff[s] failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Supermarket of Marlinton Inc. v. Meadow Gold Diaries, Inc.*, 71 F .3d 119, 122 (4th Cir.1995).

Plaintiffs' contention appears to be that RMS misrepresented to Plaintiffs that it was not subject to COBRA in May 2008. As Plaintiffs highlight in their responsive briefing, RMS's representation was based on its statement that it employed fewer than 20 employees and

therefore fell within the small employer exception to COBRA.  *See* 29 U.S.C. § 1161(b).  While it is not entirely clear, Plaintiffs appear to be asserting that they first learned that RMS might have had more than 20 employees, and thereby misrepresented its status as a COBRA-covered entity, through discovery that they obtained in the state court action in December 2009. Specifically, Plaintiffs state that they "timely filed [this] action . . . upon discovery of the existence of a controlled group of entities through discovery in the state case filed against RMS." Doc. 103 at 15.  According to the Plaintiffs, the statute of limitations on their COBRA claims began to run on December 14, 2009, when RMS "produced documents [in the state court action] that suggested that RMS might have more workers than previously represented." *Id.* at 6.

Plaintiffs' COBRA claim is based on their purported entitlement to notice of their COBRA rights from RMS.  The single fact that forms the basis for this claim is that RMS did not offer them the opportunity to elect continuation coverage under COBRA.  It is undisputed that as of the July 15, 2008 accrual date, Plaintiffs were aware of RMS's position that they were not eligible for COBRA coverage and that they had not received notice of their COBRA rights – which necessarily would have included the right to elect COBRA coverage.  Because Plaintiffs were aware of the fact that forms the basis of their COBRA claims, RMS's representations regarding the reason for not providing COBRA coverage are immaterial as it did not, and could not have, "conceal[ed] facts that are the basis of the claim." *Supermarket of Marlinton,* 71 F.3d at 122.

Moreover, Plaintiffs' proffered rationale for the tolling of the statute of limitations is based on an erroneous factual predicate.  Plaintiffs appear to be advancing the following position:  Ms. Feamster could not be expected to know that she was entitled to the opportunity to elect COBRA coverage because RMS had represented that it was not a COBRA-covered entity.

8

Contrary to Plaintiffs' suggestion, Ms. Feamster did not first acquire knowledge that RMS might have had more than 20 employees in December 2009.  Instead, Ms. Feamster was aware that RMS may have had more than 20 employees, and thereby was a COBRA-covered entity, in June 2008.  As Ms. Feamster testified at deposition, she informed a MSBCS employee that she believed RMS had misrepresented that it had more than 20 employees in a telephone conversation in June 2008:

> Ms. Feamster:  The best I recall, when I talked, actually spoke to the person at [MSBCBS in June of 2008] she told me that they didn't have it, COBRA, because they didn't have twenty employees.  And I was just like okay, and I called back and I said just answer me a question, do you mean twenty employees who have insurance or just twenty employees?  She said, no, just twenty employees.  And I said, well, I think they have twenty employees.  I think, I'm not a hundred percent sure.

S. Feamster Dep. at 102 (Exhibit 3, Doc. 92-3).  So by July 15, 2008, not only was Ms. Feamster aware that she had not received notice of her COBRA rights, she also believed that RMS was a COBRA-covered entity and had misrepresented its COBRA status.[5]  In light of her admission

---

[5]      Indeed, it was not as if Plaintiffs believed RMS to be forthcoming until the disclosure of the December 2009.  Plaintiffs' state court complaint, which was filed a year prior to this federal action and within the one year statute of limitations on Plaintiffs' COBRA claims, opaquely alleges that Defendants made "misrepresentations to Sandra Feamster."  State Ct. Compl. ¶ 18 (Exhibit 2, Doc. 92-2).

Although Plaintiffs doubtlessly would have sought remand on the basis that they were not litigating a COBRA claim in the state court action, Plaintiffs suggest that RMS should have removed that action if it thought that Plaintiffs' COBRA claim was being litigated in state court.  RMS did not remove the state court action because (1) the state court Complaint did not contain any reference to COBRA, or any other federal law for that matter; and (2) it was not readily apparent that ERISA preempted Plaintiffs' opaque state law misrepresentation claim.  Once RMS learned through discovery that such misrepresentation claim related to COBRA, it did not remove the action because the action was not removable.  RMS consistently has taken the position that it fell within COBRA's small employer exemption in calendar year 2008.  Therefore, Plaintiffs had no claim under ERISA.  RMS's decision not to remove or seek dismissal of the state court action does not, as Plaintiffs suggest, serve as an indication that RMS perceived the state court claims to have merit.  In fact, RMS has sought summary judgment on all of Plaintiffs' state court claims in a recently filed motion.  In any event, to the extent Plaintiffs have changed their minds and are now trying to litigate a COBRA claim in state court, the state court lacks jurisdiction, and RMS stands by its initial position that Plaintiffs' "commencement of an action in a clearly inappropriate forum, a court that clearly lacks jurisdiction will not toll the statute of limitations."  *Shofer v. Hack*, 970 F.2d 1316 (4th Cir. 1992).

that in June 2008 she believed that RMS had more than twenty employees, Ms. Feamster cannot now contend that the first time she had an inkling that RMS might have had more than 20 employees was in December 2009.

There is absolutely no additional information Plaintiffs could have possibly needed to bring their COBRA claim, and it is plain that Plaintiffs did not exercise due diligence and timely pursue any potential COBRA claim they may have possessed.  Thus, this case presents none of the extenuating circumstances that warrant the rare use of equitable tolling principles.  *See Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir. 2000) ("any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent").

### 3. Plaintiffs Have Not Met Their Rule 56(f) Burden on the Statute of Limitations Issue

Plaintiffs' repeated references to "material facts" and "equitable tolling" do not satisfy the Rule 56(f) standard.  As RMS has already observed, "[i]n making a Rule 56(f) motion, a party opposing summary judgment must make clear what information is sought and how it would preclude summary judgment."  *Goodell v. Rehrig Intern., Inc.*, 683 F. Supp 1051, 1054 (E.D. Va. 1988).

Although Plaintiffs' counsel asserts in his Rule 56(f) affidavit that "[e]stoppel requires evaluation of representations and reliance," at this stage in the litigation, as noted previously the Plaintiffs are aware of RMS's purported misrepresentations and their own alleged reliance. Indeed, Plaintiffs are the only individuals that know what they relied upon, and no additional discovery from RMS will shed light on this point.  Accordingly, all the information that could be used to oppose RMS's motion for summary judgment is in the Plaintiffs' sole possession.[6]

---

[6]    It is worthy of mention that Sharon Findlay, the representative of RMS whom Plaintiffs accuse of making misrepresentations has already been deposed twice.

Courts have emphasized that the non-moving party cannot simply rely on "vague assertions that additional discovery will produce needed, but unspecified, facts in opposition to summary judgment." *Baker v. American Airlines, Inc.*, 430 F.3d 750 (5th Cir. 2005). It is plain enough that Plaintiffs have failed to specifically identify any discovery that could possibly establish the timeliness of their COBRA claim, and their conclusory assertions are insufficient to establish entitlement to Rule 56(f) relief. *See Strag*, 55 F.3d at 954 (denial of a Rule 56(f) motion is proper "where the additional evidence sought in discovery would not . . . by itself create[] a genuine issue of material fact sufficient to defeat summary judgment."); *Yasin v. Coulter*, 2009 WL 2915125, *6 (E.D.Cal. 2009) (in the face of motion for summary judgment on statute of limitations grounds, plaintiff's Rule 56(f) affidavit was insufficient as it did not "make clear what information would defeat summary judgment").

**C.    Plaintiffs May Not Rely on ERISA § 502(a)(3) to Revive their Time-Barred COBRA Claims**

In its opening brief, RMS explained that, because Congress has provided a cause of action for specific harm alleged by the Plaintiffs, that cause of action is their exclusive avenue for obtaining relief. Doc. 93 at 15-17. Plaintiffs' claims based on alleged COBRA violations lies under ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), which authorizes plan participants and beneficiaries to bring a cause of action for the relief provided for in ERISA § 502(c), 29 U.S.C. § 1132(c). That Plaintiffs failed timely to pursue in a court of competent jurisdiction the cause of action provided to them by Congress to redress the harm alleged does *not* entitle them to bring those same claims under the guise of breach of fiduciary duty or estoppel under § 502(a)(3).

Plaintiffs' response to RMS's argument on this issue is somewhat disjointed and conflates the availability of a § 502(a)(3) cause of action with the question of the remedies that

11

may be awarded under § 502(a)(3).  The only point Plaintiffs seems to be making with respect to the availability of an (a)(3) cause of action is that, because RMS's plan did not contain COBRA provisions or a mechanism for COBRA administration, Plaintiffs had no claim for the relief provided for under § 502(c).  *See* Doc. 103 at 16-17.  It would follow, in theory, that a § 502(a)(3) claim was available to them, § 502(a)(3) being the "catch-all" provision that may be invoked when no more specific remedy is available under § 502(a).  But any such argument fails based on the text of § 502(c) itself.  That provision authorizes a penalty of up to $110 per day for violation of COBRA (§ 606 of ERISA), and not of the COBRA-related terms of the plaintiff's plan.  29 U.S.C. § 1132(c)(1).[7]

Because it is inescapable that Plaintiffs had a claim under §§ 502(a)(1)(A) and 502(c) of ERISA, they cannot proceed under § 502(a)(3).  Even if they could, reinstatement to RMS's plan would not be a feasible remedy in this case.

## D.     Reinstatement to the Plan is Not Feasible

Contrary to Plaintiffs' contention (Doc. 103 at 16), the circumstances of this case do not resemble those of either *Varity Corp. v. Howe*, 516 U.S. 489 (1996), or *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 391 (4th Cir. 2001).  In *Varity,* the remedies issue was not before the Supreme Court, as the petitioner had not raised that issue in its petition for certiorari.  *See* 516 U.S. at 495-96.  Further, the reinstatement remedy fashioned and approved by the lower courts in the *Varity* litigation was not analogous to that sought by the Plaintiffs here.

In *Varity Corp.*, the employer implemented "Project Sunshine," pursuant to which "all of its money-losing eggs" were placed in "one financially rickety basket" via creation of a new

---

[7]      In his Rule 56(f) affidavit, counsel for the Plaintiff states:  "Defendant Relational Management Services, LLC argues that the equitable remedy of reinstatement under 29 U.S.C. § 1132(c)(1) would be identical to the remedy of reimbursement under 29 U.S.C. § 1132(a)(3)."  Doc. 103 Ex. H ¶ 8.  RMS made no such argument.

subsidiary and transfer to that subsidiary of those money-losing operations.  516 U.S. at 493.

Employees of an affiliated corporation, Massey-Ferguson, were encouraged to transfer

employment to the new subsidiary, Massey Combines.  There would be a new plan at Massey

Combines, employees were told, which would provide the same benefits as the Massey-Ferguson

plan, and those benefits would remain secure if the employees transferred to Massey Combines.

*Id.* at 493-94.    When Massey-Ferguson's representatives made those statements to the

employees, the employer knew that Massey Combines was destined to fail and soon.  Another

component of Project Sunshine was the unilateral transfer of several thousand retirees from a

Massey Ferguson welfare plan to the new Massey Combines plan.  Within two years, the new

company was in receivership, and its employees lost their nonpension benefits, including retiree

health.  *Id.* at 494.

        Among the plaintiffs were individuals who had retired from Massey Ferguson before

Massey Combines was created ("Retirees") and a class of workers who had transferred to

Massey Combines and retired before Massey Combines failed ("the Retired Class").  Had those

plaintiffs not been transferred to Massey Combines and its plan, they would have been entitled to

retiree health care benefits under Massey-Ferguson's welfare plan.  As modified by the Eighth

Circuit of Appeals, the remedy awarded to the Retirees and members of the Retried Class

included reinstatement to the Massey-Ferguson Welfare Benefits Plan.  *See Howe v. Varity

Corp.*, 36 F.3d 746, 750, 756 (8th Cir. 1994), *aff'd on other grounds*, 516 U.S. 1065 (1996).  The

Eighth Circuit also noted that Varity Corporation and Massey-Ferguson were alter egos of

Massey Combines.  36 F.3d at 752 n.3.

        Thus, in *Varity* the participants that were reinstated to Varity's plan were retirees, and the

plan to which they were reinstated expressly provided retiree health benefits.  That is nothing

like the situation here.  Sandra Feamster, a disabled *former* employee, is seeking reinstatement to a group plan that, by its terms, covers only "Eligible *Employees*."  *See* Doc. 93 Ex. 10 (emphasis added).  Conn Feamster's status as a beneficiary under RMS's group plan was entirely derivative of Sandra Feamster's employment at RMS.  *Varity*, then, provides no support for the reinstatement remedy that these Plaintiffs are seeking.

*Griggs* too is plainly distinguishable.  The plaintiff in that case took early retirement (called a temporary retirement system or TPS) in the mistaken belief that his TPS benefits if taken in the form of a lump sum could be rolled over into a tax-deferred retirement savings vehicle.  In reality, federal tax prohibited such a rollover, the lump sum distribution was made directly to Griggs, and, as such, was immediately taxable.  237 F.3d at 373.  Had Griggs known of the tax consequences, he could have elected to take his TPS benefit in the form of an annuity.  Griggs sued, alleging that the employer's inaccurate communications about the tax consequences of a lump sum TPS benefit constituted negligent misrepresentation under state law.  The case was removed to federal court on grounds of complete preemption, and the district court concluded that DuPont had breached its fiduciary duty by failing to accurately apprise Griggs of the tax consequences of taking a TPS benefit in the form of a lump sum.  *Id.* at 381.  The district court, however, concluded that the equitable remedy of reinstatement, whether to employment or to "pre-election status" under the TPS, was "not a viable alternative."  *Id.* at 385.

The Fourth Circuit vacated that part of the district court's decision and remanded for further consideration of the viability of a reinstatement remedy.  *Id.* at 385-86.  On remand, the district court found that reinstating Griggs to *employment* was not feasible, as it "would require displacement of an incumbent employee."  *Griggs v. E.I. DuPont de Nemours & Co.*, 385 F.3d 440, 443 (4th Cir. 2004) (*Griggs II*).  But the trial court also concluded that it was appropriate to

allow Griggs to rescind his election to take his TPS benefit as a lump sum and to instead to elect the lifetime annuity option.  *Id.*  Griggs's annuity was to be based on the total value of the benefit, rather than the amount Griggs actually received – the after-tax amount.  Griggs was ordered to repay to DuPont the after-tax amount of the lump-sum payment, and to pursue his remedies for a refund of taxes paid with federal and state taxing authorities.  Any refund obtained was to be paid over the DuPont.

The *Griggs II* court of appeals modified the remedy so as to protect DuPont from any prejudice it might suffer as a result of Griggs's delayed rescission.  The modified relief fashioned by the court of appeals is set out below verbatim due to its complexity and the risk that paraphrasing might not capture the salient points:

> First, Griggs must repay to DuPont the net amount of TPS distribution received by Griggs.  In return, Griggs must be allowed to rescind his initial TPS election and opt for a monthly annuity payment instead of a lump-sum distribution.  The amount of that monthly annuity payment, however, must be determined by reference to the TPS distribution net of all taxes paid by Griggs . . . rather than by the gross amount of the TPS distribution.  That is, those actuarial assumptions that yielded an annuity payment of $796.58 per month based on a lump-sum distribution amount of $132,700 should be applied to calculate a monthly payment amount based on the $74,627 that Griggs must repay.  Because the monthly benefit that DuPont must pay is reduced to an amount reflective of the net TPS distribution that Griggs must repay, the effect of the potential tax loss is borne by Griggs, not DuPont.  Thus, under this plan, there would be no reason to *require* Griggs to take steps to recover his tax payments . . . , and Griggs would have no obligation to turn over to DuPont any amount that he might recover from the taxing authorities.  All other aspects of the district court's order would remain in effect, including the requirement that DuPont's obligation to make the monthly payments is retroactive to Griggs's original 1994 retirement date.

385 F.3d at 452.  The appellate court further indicated that Griggs should be allowed the alternative of repaying the gross amount of the TPS and receiving a monthly annuity based on that amount.  *Id.* at 453.

After all was said and done, the parties in *Griggs* – both the plaintiff and the defendant – were restored to the positions each occupied before Griggs elected the form of his TPS benefit.

15

Thus, the remedy was designed to restore the status quo *ex ante*. In this case, by contrast, as explained in RMS's opening brief reinstating the Plaintiffs to RMS's group health plan, in addition to violating the terms of the plan, would place the Plaintiffs in a better position than they would have occupied if they had been offered and elected COBRA coverage, and RMS and Defendant Highmark West Virginia, Inc. would concomitantly worse off. *See* Doc. 93 at 19-20. That is not an appropriate equitable remedy in any sense of the concept. And, of course, Sandra Feamster cannot "rescind" her physical inability to work, like Griggs was able to rescind his election to take his TPS benefit in the form of a lump sum. Plaintiffs did not cite a single case awarding or approving of reinstatement to the plan as a remedy for a COBRA violation.

In closing, Plaintiffs assert that they "seek no windfall from RMS and the suggestion that the Plaintiff would be 'better off' than other participants makes no sense." Doc. 103 at 19. According to the Plaintiffs:

> The assessment of COBRA premiums can only follow a proper COBRA notice and direction of what is owned – this minimum is guaranteed by the COBRA statute itself. If RMS' failure to provide either amounts to a defense, then it is difficult to imagine when a COBRA plaintiff would ever have a cause of action.

*Id.* at 19-20. As explained in RMS's opening brief, COBRA plaintiffs have an express cause of action under ERISA and that cause of action allows them to recover for medical expenses that would have been covered under the plan, minus premiums for COBRA coverage and any co-pays or deductibles provided for by the plan's terms, as well as statutory penalties in the court's discretion. *See* Doc. 93 at 7-8.[8] In light of the law, Plaintiffs' concluding statements are puzzling.

---

[8]    In its opening brief, RMS stated that the Plaintiffs had yet to provide any evidence of unpaid medical bills. Since that brief was filed, Plaintiffs responded to RMS's discovery requests and provided copies of some unpaid medical bills for Conn Feamster.

Again, for a period of one year from the date on which they knew RMS would not be offering them COBRA coverage, Sandra and Conn Feamster had a cause of action under § 502(a)(1)(A) of ERISA for the relief provided for in § 502(c) of ERISA. Having missed that deadline, they cannot rely on § 502(a)(3) of ERISA instead.

###	III.	CONCLUSION

For all of the foregoing reasons and the reasons explained in RMS's moving papers, RMS's motion for summary judgment should be granted.

Dated November 1, 2010.

Respectfully submitted:

s/   J.A. Curia III
Jan L. Fox (WV Bar No. 1259)
J.A. Curia III (WV Bar No. 10043)
STEPTOE & JOHNSON PLLC
Eighth Floor, Chase Tower
P.O. Box 1588
Charleston, WV 25326-1588
(304) 353-8000
joseph.curia@steptoe-johnson.com

Sara E. Hauptfuehrer (WV Bar No. 8931)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8195

*Counsel for Defendant*
*Relational Management Services, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
PARKERSBURG**

**CONN FEAMSTER and
SANDRA FEAMSTER,**

        **Plaintiffs,**

**vs.**
                           **Civil Action No. 6:10-cv-241
                                    Chief Judge Goodwin**

**HIGHMARK WEST VIRGINIA INC.
d/b/a MOUNTAIN STATE BLUE CROSS
& BLUE SHIELD and RELATIONAL
MANAGEMENT SERVICES, LLC,**

        **Defendants.**

## CERTIFICATE OF SERVICE

        I hereby certify that on November 1, 2010, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

| | |
|---|---|
| Jeffrey V. Mehalic (WVSB #2519)<br>LAW OFFICES OF JEFFREY V. MEHALIC<br>2011 Quarrier Street<br>P.O. Box 11133<br>Charleston, WV  25339-1133<br>304-346-3462<br>jeff@mehaliclaw.com<br>*Counsel for Plaintiffs* | Robert J. Kent (WVSB #5010)<br>BOWLES RICE MCDAVID GRAFF & LOVE LLP<br>Fifth Floor, United Square<br>P.O. Box 49<br>Parkersburg, WV 26102<br>304-420-5504<br>rkent@bowlesrice.com<br>*Co-Counsel for Highmark West Virginia Inc.  d/b/a Mountain State Blue Cross & Blue Shield* |
| Roy F. Harmon III<br>HARMON & MAJOR<br>P.O. Box 8954<br>Greenville, SC 29604<br>864-467-1712<br>harmonmajor@gmail.com<br>*Co-Counsel for Highmark West Virginia Inc. d/b/a Mountain State Blue Cross & Blue Shield* | |
| | s/   J.A. Curia III            <br>J.A. Curia III (WV Bar No. 10043)<br>STEPTOE & JOHNSON PLLC<br>Eighth Floor, Chase Tower<br>P.O. Box 1588<br>Charleston, WV 25326-1588<br>(304) 353-8000<br>joseph.curia@steptoe-johnson.com<br>*Counsel for Defendant Relational Management Services, LLC* |